**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

INTEGRATED MANAGEMENT SYSTEMS,
INC.,

      Plaintiff,

v.                                  Case No. 11-14382

SNEHASISH MAITY and ADVENT GLOBAL
SOLUTIONS, INC.,

      Defendants.
                                      /

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND,
GRANTING IN PART DEFENDANTS' MOTION TO DISMISS, AND
TRANSFERRING CASE TO THE SOUTHERN DISTRICT OF TEXAS**

On August 17, 2011, Plaintiff Integrated Management Systems, Inc. filed this case against Defendants Snehasish Maity and Advent Global Solutions, Inc. ("Advent") in Washtenaw County Circuit Court seeking at least $25,000 in damages for breach of contract and tortious interference with contract. Defendants timely removed the action on October 5, 2011, alleging subject-matter jurisdiction through diversity of citizenship. *See* 28 U.S.C. § 1332. Following removal, Defendants filed a motion to dismiss for improper venue, or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404. Plaintiff responded on December 12, 2011, and filed a motion to remand for lack of subject-matter jurisdiction the next day. At the direction of the court, Defendants filed an expedited response to Plaintiff's motion on December 22, 2011. A hearing on the motions is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). Having reviewed the motions and accompanying briefs, the court will deny Plaintiff's motion to remand and grant in part

Defendants' motion to dismiss. Pursuant to 28 U.S.C. § 1404, the court will transfer the case to the United States District Court for the Southern District of Texas.

## I. BACKGROUND

In January 2011, Plaintiff entered into a subcontractor agreement with Defendant Advent, in which Defendant Advent agreed to obtain subcontractor personnel from Plaintiff. Advent would then provide the subcontractor personnel to a non-party, Apple, Inc. ("Apple"). (Compl. at ¶ 13, 16, Dkt. #1.) To fulfill its obligations under the subcontractor agreement, on February 16, 2011, Plaintiff entered into an employment contract with Defendant Maity, whereby Maity accepted a position as a software developer with Plaintiff and agreed to be supplied as a subcontractor to Advent. (*Id.* at ¶ 15.) Plaintiff claims that it incurred substantial expenses obtaining and processing an H1B visa for Defendant Maity, a citizen of India. (*Id.* at ¶ 14.). Plaintiff alleges that in July 2011 Defendant Maity terminated his employment with Plaintiff and accepted a position with Defendant Advent. (*Id.* at ¶ 18.) In this action, Plaintiff seeks damages that are "foreseeable and reasonably related" to Defendant Maity's alleged breach of the employment contract, Defendant Advent's alleged breach of the subcontractor agreement, and Defendant Advent's alleged tortious interference with the employment contract between Plaintiff and Defendant Maity. Plaintiff further requests that the court enter an injunction enjoining Defendant Maity from violating the terms of the employment contract.

## II. DISCUSSION

Shortly after removing this action from the Washtenaw County Circuit Court, Defendants filed a motion to dismiss. In their motion, Defendants argue that venue in

the Eastern District of Michigan is improper under 28 U.S.C. § 1391 and that the action is alternatively subject to dismissal or transfer under 28 U.S.C. § 1404. Plaintiff opposes the motion and moves to remand the case to the Washtenaw County Circuit Court, arguing that Defendants have failed to establish that the amount in controversy exceeds $75,000. Below, the court first addresses Plaintiff's jurisdictional challenge, and, upon finding that subject-matter jurisdiction exists, it turns to Defendants' motion to dismiss or transfer venue.

### A. Plaintiff's Motion to Remand for Lack of Subject-Matter Jurisdiction

Plaintiff argues that the court lacks subject-matter jurisdiction in this case because Defendants have not established the jurisdictional requirements for removal from state court based on diversity of citizenship. Federal courts are authorized to exercise jurisdiction in cases where the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Where a case is removed from state court, "the determination of federal jurisdiction in a diversity case is made as of the time of removal." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000) (citation omitted). In actions where a plaintiff asserts claims against two or more defendants, the amount asserted against each defendant may be aggregated to satisfy the amount in controversy. *Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1081 (7th Cir. 2001); *see also Fechheimer Bros. Co. v. Barnwasser*, 146 F.2d 974, 976 (6th Cir. 1945) (citations omitted) (stating that a plaintiff may not "secure jurisdiction in the federal court by joining separate defendants whose aggregate indebtedness to him exceeds the jurisdictional amount, unless the test of jurisdiction of joint liability of the defendants to him be met").

Conversely, where a plaintiff seeks to hold multiple defendants severally liable, the amount in controversy requirement must be satisfied against each defendant. *Middle Tenn. News Co.*, 250 F.3d at 1077. Defendants bear the burden of proving that the case may be removed by showing that it is "more likely than not" that the amount in controversy exceeds $75,000. *Gafford v. General Electric Co.*, 997 F.2d 150, 158 (6th Cir. 1993), *overruled on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1191 (2010).

Initially, the court notes that Defendants are entitled to aggregate the amount claimed by Plaintiff against each Defendant to satisfy the amount in controversy requirement because Plaintiff seeks to hold them jointly and severally liable. While Plaintiff does not indicate this desire in its complaint, Sudhir K. Jain, president and controlling shareholder of Plaintiff, clearly states in a sworn affidavit attached as an exhibit to Plaintiff's motion that Plaintiff "asserts damages against both Defendants . . . jointly and severally." (Pl.'s Mot. to Remand Ex. A at ¶ 13, Dkt. # 6.) According to Plaintiff, even if it succeeds on each of its claims against Defendants—whether Defendants are held jointly and severally liable, or merely severally liable—the amount in controversy, exclusive of costs and interests, will not exceed $75,000, and therefore, removal is not appropriate under 28 U.S.C. § 1441. In support of this assertion, Jain states in his affidavit that Plaintiff seeks economic damages in the amount of $56,998 and does not seek non-economic damages. (*Id.* at ¶¶ 10, 12.) Defendants argue, however, that Jain's affidavit should not be accorded dispositive weight because prior to filing this case in state court, Jain sent an email to Defendant Maity indicating that Plaintiff would seek approximately $90,000 in damages from Defendant Maity if he

4

breached his employment contract with Plaintiff. (Def.'s Resp. to Mot. to Remand at 4, Dkt. # 10.)

Jain's email, dated July 20, 2011, advised Maity that if he did not withdraw his letter of resignation, Plaintiff would file a lawsuit against Defendant Maity for "significant financial damages (estimated at $40,000) which will be served to you by the Washtenaw County Court . . . [and] [i]n addition there are the $50,000 financial damages that we are required to pay to Advent." (Defs.' Resp. to Pl.'s Mot. to Remand Ex. 1, Dkt. # 10-2.) Because Plaintiff seeks "foreseeable and reasonably related" damages resulting from Defendants' alleged breaches and tortious conduct, (*see* Compl. at ¶¶ 25, 32, 40), the court agrees with Defendants' assertion that the email establishes that it was "more likely than not" that *at the time of removal* the amount in controversy exceeded $75,000. Jain's email clearly demonstrates that Plaintiff's president believed that Defendant Maity's alleged breach of the employment contract would result in "foreseeable and reasonably related" damages of approximately $90,000. Not until Plaintiff filed a motion to remand, nearly four months after initiating this action and two months after Defendants removed to this court, did Plaintiff state that it only sought to recover $56,998. If the amount in controversy at the time of removal was "more likely than not" greater than $75,000, even a later *stipulation* that the amount is now less need not divest the court of jurisdiction. *See Rogers*, 230 F.3d at 872 (holding that a "post-removal stipulation reducing the amount in controversy to below the jurisdictional limit does not require remand to state court"); *see also In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992). Having found that Defendants have established that it was "more likely than not" that the amount in controversy at the time of removal

5

exceeded the jurisdictional requirement of $75,000, the court will deny Plaintiff's motion to remand.

### B. Defendants' Motion to Dismiss

#### *1. Improper Venue under 28 U.S.C. § 1391*

Defendants first argue in their motion to dismiss that venue in the Eastern District of Michigan is improper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in Texas and California, not in Michigan. (Defs.' Mot. to Dismiss Br. at 1, Dkt. # 2.) According to Defendants, neither Defendant Maity nor Advent traveled to Michigan for any purpose related to the two contracts in question and "[a]ll the work was performed in either Texas or California." (*Id.* at 2.) The court disagrees with Defendants' argument that a substantial part of the events giving rise to Plaintiff's claims did not occur in Michigan and finds that venue in the Eastern District of Michigan is proper pursuant to § 1391(a)(2).

Under §1391(a), where jurisdiction is founded solely on diversity of citizenship, a civil action may be

> brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C.§ 1391(a). Here, the relevant provision is § 1391(a)(2). The United States Court of Appeals for the Sixth Circuit has interpreted "substantial part" "to include[] any forum with a substantial connection to the plaintiff's claim." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263-64 (6th Cir. 1998). The standard does not require that a

majority of the acts or omissions giving rise to a plaintiff's claims occur in the venue chosen by Plaintiff. *Id.* at 263. "It is sufficient that a substantial part of the events occurred in the challenged venue, even if a greater part of the events occurred elsewhere." *Cobsays, L.L.C. v. FMP Resistance Welding Supply, Inc.*, No. 07-13736, 2008 WL 162588, at *2 (E.D. Mich. Jan. 17, 2008). In an action for breach of contract, courts making venue determinations under § 1391(a)(2) evaluate several factors to determine whether a substantial part of the events occurred in the forum selected by a plaintiff, including where the contract was negotiated and executed, where the contract was performed, and where the alleged breach occurred. *Parenteau v. Century Bank*, No. 2:07-CV-851, 2008 WL 281626, *3 (S.D. Ohio Jan. 31, 2008) (citing *Gulf Ins. Co. V. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)). Courts in this district have also considered where the effects of a defendant's alleged breach of contract are experienced. *See, e.g.*, *Cobsays, L.L.C.*, 2008 WL 162588 at *3. A defendant bears the burden of establishing that venue is improper. *Amphion Inc. v. Buckeye Elec. Co.*, 285 F. Supp. 2d 943, 945 (E.D. Mich. 2003) (citing 17 James Wm. Moore et al., Moore's Federal Practice ¶ 110.01 (3d ed. 1997)). Thus, to succeed on their motion, Defendants must "demonstrate that . . . no substantial part of the events giving rise to [Plaintiff's] claim[s] occurred in the Eastern District of Michigan." *Cobsays, L.L.C.* 2008 WL 162588 at *2.

Defendants' principal reliance on their assertions that neither Defendant Maity nor any personnel of Defendant Advent ever traveled to Michigan and all work related to the contracts was performed in Texas and California are misplaced. First, merely because neither Defendant traveled to Michigan does not necessarily make venue

7

improper under § 1391(a)(2). Such an argument invites the court to consider the actions of Defendants alone in determining whether a substantial part of the events giving rise to Plaintiff's claims occurred in this district, an approach implicitly rejected by the Sixith Circuit in *Bramlet, see Bramlet*, 141 F.3d at 263, and explicitly rejected by other circuits, *see e.g.*, *Uffner v. La Union Francaise, S.A.*, 244 F.3d 38, 43 n.6 (1st Cir. 2001); *but see Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir.1995). Further, Defendants' argument that the work contemplated in the contracts occurred in Texas and California simply demonstrates that there may be more than one venue where a substantial part of the events occurred. It does not cast doubt on the propriety of venue in this district. Defendants offer no other persuasive arguments challenging Plaintiff's choice of venue under § 1391(a)(2) and do not contest Plaintiff's assertion in its verified complaint that "[a]ll actions and inactions of the parties occurred at least partially within the State of Michigan," (Compl. at ¶7), and that Plaintiff's principal place of business is in Ann Arbor, Michigan, (*id.* at ¶11).

While not highly specific, Plaintiff's statements in its verified complaint, viewed in a light most favorable to it as the non-moving party, suggest, at a minimum, that Plaintiff negotiated the contracts with Defendants Advent and Maity and worked to secure Maity's visa from its place of business in Ann Arbor. The effects of Defendants' alleged breaches are also borne by Plaintiff in Michigan. Because the court concludes that the contracts were at least in part negotiated in Michigan, Plaintiff worked to secure Maity's visa from its Michigan corporate location, and it experienced the harm of Defendants' alleged breaches in Michigan, venue is proper under § 1391(a)(2) because this action has a substantial connection to the Eastern District of Michigan.

### *2. Transfer of Claims Pursuant to 28 U.S.C. § 1404*

Although venue is proper in the Eastern District of Michigan, the case may be transferrable to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C.§ 1404(a).[1] To transfer a case under § 1404(a), Defendants must demonstrate that the following three requirements are met in this case: "(1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) transfer is in the convenience of the witnesses and parties." *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994). District courts consider the following factors when deciding whether to transfer a case:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

---

[1]In their motion, Defendants appear to conflate the common-law doctrine of *forum non conveniens* with the Congressionally-adopted procedure for transferring a case within the federal system set forth in § 1404, asking for a dismissal or transfer of the case on the basis of *forum non conveniens*. "The common-law doctrine of *forum non conveniens* 'has continuing application [in federal courts] only in cases where the alternative forum is abroad . . . .'" *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (citing *American Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994)) (alteration in original). "For the federal court system, Congress has codified the doctrine and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." *Id.* Accordingly, to the extent that Defendants' invite the court to determine that Plaintiff's claims be dismissed on the basis of *forum non conveniens*, the court declines. Instead, the court will construe Defendants' request as one to transfer this case to the Southern District of Texas pursuant to § 1404(a).

*Overland, Inc. V. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000) (citing *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 183 (S.D.N.Y.1995)).  "The presence of a valid forum selection clause is entitled to substantial consideration under the § 1404(a) analysis." *J. Slagter & Son Constr. Co. v. IBCS Group, Inc.*, No. 1:11-CV-605, 2011 WL 3501866, at *5 (W.D. Mich. 2011) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995)).  Generally, the burden of proving that the transferee district is a more convenient forum rests upon the party bringing the motion.  *Viron Int'l Corp. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 815 (W.D. Mich. 2002) (citations omitted).  However, where a valid forum selection clause exists, the burden shifts to the plaintiff to demonstrate why he should not be bound to the contractual provision.  *See id.*; *see also Jumara*, 55 F.3d at 880; *Superior Care Pharm. Inc. v. Medicine Shoppe Int'l, Inc.*, No. 2:10-cv-207, 2011 WL 597065, at *4 (S.D. Ohio Feb. 10, 2011).

> A forum selection clause should be upheld absent a strong showing that it should be set aside.  The party opposing the application of the clause bears the burden of showing that it should be set aside.  "When evaluating the enforceability of a forum selection clause, [the Sixth Circuit] looks to the following factors: (1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust.  The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced.

*Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) (citations omitted).

### *a. Claims against Defendant Advent*

Defendant Advent argues that a forum selection clause contained in the subcontractor agreement requires that Plaintiff bring its claims against Advent in a state or federal court in Texas.  The clause cited by Defendant Advent provides:

> Governing Law; Forum.  This Agreement shall be governed in all respects by the laws of the United States of America and by the laws of the State of Texas, as such laws are applied to agreements entered into and to be performed entirely within Texas between Texas residents.  Each of the parties irrevocably consents to the exclusive personal jurisdiction of the federal and state courts located in Texas, as applicable, for any matter arising out of or relating to this Agreement, except that in actions seeking to enforce any order or any judgment of such federal or state courts located in Texas, such personal jurisdiction shall be non-exclusive.

(Defs.' Mot. to Dismiss Ex. 1 at ¶ 20.4, Dkt. # 3-1.)  Plaintiff contends that the exclusive forum provision contained in the above language has a narrow scope, arguing that "[i]t is clear from the context of the alleged 'exclusive personal jurisdiction' [sic] that this clause is intended to bind the contracting parties to suits or claims brought by [Advent]; not to claims brought against [Advent]."  (Pl.'s Resp. To Defs.' Mot. to Dismiss at 7, Dkt. # 5 (emphasis in original).)  Plaintiff offers no support for why its reading of the forum selection clause is so clearly evident aside from baldly asserting that Defendant Advent "misread the language of their [sic] own contract."  (*Id.*)  Indeed, it seems to the court entirely clear that Plaintiff's reading is belied by the plain language of the provision.  The provision states that the contracting parties submit to the exclusive personal jurisdiction of the state and federal courts of Texas for "*any matter* arising out of or relating to" the subcontractor agreement.  (Defs.' Mot. to Dismiss Ex. 1 at ¶ 20.4 (emphasis added).)  Plaintiff's narrow reading of the clause fails to account for the unambiguous import of the phrase "any matter," which must be interpreted—absent a limiting clause—to include both claims brought by Defendant Advent and claims brought against Advent.  Plaintiff offers no other arguments casting doubt on the validity or application of the forum selection clause to the claims it asserts against Defendant Advent.  Specifically, Plaintiff does not allege that any of the factors enunciated in *PartyGaming Ltd.* are

11

present in this case. Because Plaintiff has not satisfied its burden of showing that the forum selection clause should be set aside, the court finds that the clause contained in the subcontractor agreement applies to the claims asserted against Advent.

Having found a valid and applicable forum selection clause, the court now addresses Defendant Advent's request to transfer venue under § 1404(a), beginning with the question of whether venue would have been proper had the action been originally filed in the transferee forum. Defendant Advent—having its principal place of business in Texas—resides in Texas, and the facts giving rise to Plaintiff's breach of contract and tortious interference claims appear to have occurred, at least in part, in Texas. Accordingly, under 28 U.S.C. § 1391(a)(1) and (2), venue would have been proper if this case had been initiated in the Southern District of Texas.

Turning to the relevant factors set forth in *Overland, Inc.*, factors one, two, and three do not favor either party. The convenience of the parties is evenly balanced between Michigan and Texas because much of the evidence in this case is in the possession of Plaintiff and Defendant Advent at their corporate offices in Michigan and Texas respectively, and neither party demonstrates that a substantially greater portion of the evidence is in its possession. Further, while preliminary witness lists have not yet been filed, the parties appear to contemplate that most witnesses at trial will be employees of the two companies, and, therefore, availability of process is not of substantial importance. Plaintiff's suggestion that the testimony of personnel of non-party Apple, a company with its principal place of business in California, may be necessary does not alter the analysis because convenience and the availability of process to compel the attendance of unwilling witnesses will be substantially the same

whether the case is adjudicated in Texas or Michigan. Moving now to factors four, five, and six, the parties have failed to present sufficient evidence in order for the court to make an informed determination as to these factors. The record lacks sufficient evidence to establish where the locus of operative facts giving rise to Plaintiff's claims occurred, nor do the parties proffer affidavits or other documentation of their relative means. Additionally, the parties' briefs are virtually devoid of any arguments as to which law governs Plaintiff's claims. Paragraph 20.4 of the subcontractor agreement states that the "Agreement shall be governed in all respects by the laws of the United States of America and by the laws of the State of Texas, as such laws are applied to agreements entered into and to be performed entirely within Texas between Texas residents." (Defs.' Mot. to Dismiss Ex. 1 at ¶ 20.4.) While this provision at least suggests that the contract itself is governed by Texas law, it does not clearly indicate which law governs Plaintiff's tortious interference claim. In light of the incomplete briefing of the parties, the court declines to give significant weight to factors four, five, and six in the transfer of venue calculus.

The final two factors, Plaintiff's choice of forum and the interests of justice based on the totality of the circumstance, weigh heavily in favor of transferring the claims against Defendant Advent to Texas. Because the court found the forum selection clause to be valid and applicable, granting deference to Plaintiff's choice of forum in this case "would only encourage parties to violate their contractual obligations, the integrity of which are vital to our judicial system." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (citing *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy J., concurring)); *see also Detroit Coke Corp.*, 794 F. Supp. at 219 (finding that the plaintiff

13

"made [his] 'choice' of forum when [he] signed the Agreement which contained the forum selection clause"). Without any evidence tending to show why Plaintiff should not be bound by its contractual choice of forum, the court concludes that deference is not owed to Plaintiff's choice of forum and the interests of justice weigh in favor of transferring the case to Texas. Accordingly, the court finds that Plaintiff has failed to carry its burden to overcome the valid forum selection clause, and the court will transfer the claims against Defendant Advent to the United States District Court for the Southern District of Texas.

### b. Claims against Defendant Maity

Defendant Maity also seeks to transfer Plaintiff's claim against him to the Southern District of Texas. Plaintiff contests Defendant Maity's request, arguing that a valid forum selection clause in the employment contract requires that claims arising from the contract be litigated in Washtenaw County, Michigan. The provision cited by Plaintiff states, in relevant part, that the contract "shall be enforceable under the laws of the State of Michigan and in courts located in Washtenaw County." (Compl. Ex. 2, Dkt. # 1-1.) As Defendant Maity observes, this provision is cast in permissive terms and lacks the limiting language of an exclusive choice of forum clause. (Defs.' Reply at 3, Dkt. # 9.) Under Michigan law,[2] "[i]n ascertaining the meaning of a contract, [the court] give[s] the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 28

---

[2] Because Defendant Maity does not challenge Plaintiff's characterization of the contract as a "Michigan contract of employment" nor object to Plaintiff's reliance on Michigan law to interpret the contract, the court will rely on Michigan law to interpret the provision in question.

(Mich. 2005) (citing *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2003)). Further, "the judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by the contracting parties," *Rory*, 703 N.W.2d at 26, "absent some highly unusual circumstance, such as a contract in violation of law or public policy," *Wilkie*, 664 N.W.2d at 782. The plain meaning of the provision cannot reasonably be interpreted as vesting in Michigan courts exclusive jurisdiction to enforce the contract because the provision is devoid of any limiting language. The provision states only that the contract is *enforceable* in the courts of Washtenaw County, Michigan. It does not state that these courts shall have *exclusive* jurisdiction. Further, the court cannot read exclusivity into the provision simply because Plaintiff now argues that the provision was intended to serve as a forum selection clause. Therefore, the court finds that the provision does not operate as an exclusive choice of forum.

      The court now considers Defendant Maity's request to transfer venue. Because a forum selection clause does not apply to Plaintiff's claim against Defendant Maity, the burden rests upon Maity to demonstrate why transfer to the Southern District of Texas is appropriate. *Viron Int'l Corp.,* 239 F. Supp. 2d at 815. As an initial matter, the court finds that the breach of contract claim against Defendant Maity could have been brought in the Southern District of Texas pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise Plaintiff's claim occurred their. Defendants have proffered numerous affidavits tending to show that Maity performed work under the employment contract in Texas. (*See* Defs.' Mot. to Dismiss Exs. 2, 3, and 4, Dkt. # 3-2,3, and 4.) Additionally, the complaint alleges that Defendant Maity breached the employment contract by terminating his employment with Plaintiff and accepting

employment in Texas with Defendant Advent. (*See* Compl. at ¶ 18.) On the bases of the affidavits and the allegations in the complaint, venue would have been proper in the Southern District of Texas if the case was initiated there.

Returning once again to the factors set forth in *Overland, Inc.*, the court first observes that its earlier determination that the claims against Defendant Advent are subject to transfer bears heavily on Defendant Maity's transfer request. Party and judicial resources would be needlessly wasted by denying Defendant Maity's request to transfer venue. Plaintiff even admits as much, stating that "filing two separate actions in two separate states makes little sense, especially where the evidence and damages so overlap as to be essentially identical." (Pl.'s Resp. to Defs.' Mot. to Dismiss at 4.) Both the convenience of the parties and witnesses factor and the trial efficiency factor weigh overwhelmingly in favor of transferring the single claim against Defendant Maity to the Southern District of Texas. Because the evidence Plaintiff evidently intends to use to substantiate its claims against Defendants "so overlap[s] as to be essentially identical," (*id.*), it would be unreasonable to require the parties and witnesses to engage in parallel cases in two separate states. Granting Defendant Maity's request to transfer venue will allow the parties to resolve their dispute in a single action, thereby ensuring uniform results, minimizing litigation costs, and conserving judicial resources.

No other factors weigh as heavily as the convenience to the parties and witnesses and trial efficiency. Neither availability of process nor the location of relevant documents favor either Texas or Michigan because the witnesses and relevant documents are split between the venues. Additionally, as the court explained earlier, the briefs submitted by the parties do not provide a sufficient explanation to support a

conclusion that either the locus of operative facts or the relative means of the parties weigh in favor of either Plaintiff or Defendant Maity. And, while a federal court in Michigan would likely be more familiar with Michigan contract law, such a fact is not dispositive, and in this instance, does not outweigh the fact that litigating Plaintiff's claims in two separate federal courts would make "little sense." Finally, in spite of the general rule of according strong deference to a plaintiff's choice of forum, *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 242 (1981), such deference does not counterbalance the convenience and trial efficiency factors in this case. In this instance, giving dispositive weight to Plaintiff's choice of forum would force Plaintiff to pursue a course of action it never intended to pursue and which it states is financially impracticable. By transferring the entire case to the Southern District of Texas, the court accounts for Plaintiff's desire to litigate all of its claims before a single court, while also ensuring that Plaintiff respects its contractual obligation set forth in the subcontractor agreement to litigate claims against Defendant Advent in Texas. Accordingly, the court will transfer Plaintiff's breach of contract claim against Defendant Maity to the Southern District of Texas.

### III. CONCLUSION

IT IS ORDERED that Plaintiff's Motion to Remand [Dkt. # 6] is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss [Dkt. # 2] is GRANTED IN PART. It is GRANTED with respect to Defendants' request to transfer venue to the United States District Court for the Southern District of Texas.

    s/Robert H. Cleland
    ROBERT H. CLELAND
    UNITED STATES DISTRICT JUDGE

Dated: January 19, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 19, 2012, by electronic and/or ordinary mail.

                                                              s/Lisa Wagner
                                                              Case Manager and Deputy Clerk
                                                              (313) 234-5522